184 Cal.App.4th 637 (2010)
RON BURNS CONSTRUCTION COMPANY, INC., Plaintiff and Appellant,
v.
DAVID R. MOORE, as Trustee, etc., et al., Defendants and Respondents.
No. E047077.
Court of Appeals of California, Fourth District, Division Two.
May 11, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*640 Edward M. Picozzi for Plaintiff and Appellant.
J. Brian Watkins for Defendants and Respondents.

OPINION
RICHLI, J.
Plaintiff's counsel and defendants' counsel agreed to multiple extensions of plaintiff's time to file a motion for attorney fees on appeal, while they were trying to settle the amount owed. Under California Rules of Court, rule 3.1702(c)(2), any stipulation to extend the time for filing a motion for attorney fees on appeal must be filed with the court before the original time has expired. Plaintiff's counsel, however, failed to file a written stipulation within this time. When negotiations broke down, plaintiff's counsel finally filed a motion for attorney fees on appeal. Defendants' counsel did not deny granting several extensions of time; nevertheless, he argued that the motion was time-barred. The trial court agreed, and it therefore denied the motion for attorney fees.
Plaintiff's counsel then filed a motion for relief from default under Code of Civil Procedure section 473 (section 473). The trial court denied this motion, too, for two reasons: (1) The failure to file a written stipulation in a timely manner was inexcusable neglect; and (2) the motion for relief from default under section 473 was "an improper attempt to circumvent" the requirements applicable to a motion for reconsideration under Code of Civil Procedure section 1008 (section 1008).
Plaintiff appeals. We will reverse.
First, we will hold that plaintiff's counsel's reliance on his adversary's agreement was excusable neglect, as a matter of law. This is true even though *641 plaintiff's counsel was at fault for failing to file a timely written stipulation. Admittedly, the law frowns on an attorney's neglect to comply with a clear rule. However, it positively glowers at another attorney's exploitation of such neglect as an excuse to break his word.
Second, we will hold that the motion under section 473 did not have to satisfy the requirements of section 1008. The trial court relied on Gilberd v. AC Transit (1995) 32 Cal.App.4th 1494 [38 Cal.Rptr.2d 626]. However, more recent, more persuasive, and more analogous cases have held that "[i]f the requirements for relief under section 473 are met, the viability of relief under section 473 cannot be defeated because the requirements for relief under section 1008 may not also have been met. [Citation.]" (Wozniak v. Lucutz (2002) 102 Cal.App.4th 1031, 1043 [126 Cal.Rptr.2d 310], disapproved on other grounds in Le Francois v. Goel (2005) 35 Cal.4th 1094, 1107, fn. 5 [29 Cal.Rptr.3d 249, 112 P.3d 636].)

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Underlying Proceedings.

In 2003, plaintiff Ron Burns Construction Company, Inc. (Burns), filed this action against Moore Electric, Inc., David R. Moore, and Gail Le Moore[1] (collectively Moore).[2]
In 2005, the trial court entered judgment in favor of Burns and against Moore. Moore appealed. In May 2007, we issued our opinion affirming the judgment. We also awarded Burns costs on appeal. On September 5, 2007, we issued our remittitur.
(1) Under California Rules of Court, rule 3.1702(c)(1), a motion for attorney fees on appeal must be filed within 40 days after the clerk sends notice of issuance of the remittitur. (See also Cal. Rules of Court, former rule 8.276(d)(1), now Cal. Rules of Court, rule 8.278(c)(1).) Accordingly, the original deadline for filing such a motion was October 15, 2007.
Under California Rules of Court, rule 3.1702(c)(2), however, "[t]he parties may by stipulation filed before the expiration of the time allowed under (c)(1) extend the time for filing the motion up to an additional 60 days." (Italics added.)

*642 B. The Stipulations to Extend Time.

The following facts were shown by Burns's eventual motion for relief from default.
After the issuance of the remittitur, Burns's counsel prepared a motion for attorney fees. Before filing it, however, he contacted Moore's counsel in the hope of settling the attorney fee claim. Negotiations ensued.
On October 10, 2007, both counsel agreed in writing to extend the deadline for filing a motion for attorney fees to October 22. At the time, however, this agreement was not filed with the trial court.
On October 20, Burns's counsel sent Moore's counsel a fax confirming that they had orally agreed to extend the deadline again to October 29. Once again, this agreement was not filed with the trial court.
On October 26, Burns's counsel sent Moore's counsel another fax confirming that they had orally agreed to further extend the deadline to October 31. Yet again, this agreement was not filed with the trial court.
Meanwhile, during the last week of October 2007, a number of wildfires broke out, including the Witch Creek fire and the Poomacha fire. These fires threatened Burns's counsel's ranch and law office and made it essentially impossible for him to file the motion.
On October 31, 2007, in a telephone conversation, Moore's counsel denied having extended the deadline beyond October 29.

C. Subsequent Proceedings.

On November 6, 2007, Burns filed an ex parte application for an order that a motion for attorney fees was still timely. It stated: "Counsel agreed to extend the deadline to October 31, 2007. As such, there should be no issue as to timeliness. If[,] however, this court finds that there was no agreement to extend the date, then plaintiff requests relief under CCP 473 . . . ." The trial court denied the ex parte application, ruling that the issue of timeliness "[m]ay be addressed in a formal, noticed motion."
On November 13, 2007, Burns filed a motion for attorney fees. It stated that "the issue of the timeliness of this motion . . . is addressed in" the earlier ex parte application, which was attached and incorporated by reference.
Moore filed an opposition to the motion for attorney fees. The parties have not seen fit to include this opposition in the appellate record. However, it *643 evidently argued that the motion was untimely. On January 14, 2008, the trial court denied the motion as untimely.
On March 19, 2008, Burns filed a motion for relief from default under section 473. Moore did not deny granting the extensions of time. Earlier, Moore's counsel had denied extending the time to file a memorandum of costs, but not the time to file a motion for attorney fees. Indeed, Moore did not submit any declaration or other evidence in opposition to the motion. Rather, Moore argued that, because the motion for attorney fees had already been denied, the motion under section 473 effectively sought reconsideration, in violation of section 1008.
On September 9, 2008, after hearing argument, the trial court denied the motion. It ruled that the motion for attorney fees had been untimely due to "an inexcusable mistake of law" and that the motion under section 473 was "an improper attempt to circumvent CCP[ ]1008."

II

APPEALABILITY[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

THE MOTION FOR RELIEF FROM DEFAULT
Burns contends that the trial court erred by denying the motion for relief from default under section 473.

A. Excusable v. Inexcusable Neglect.

(2) Under section 473, subdivision (b), the trial court can relieve a party from any order resulting from "mistake, inadvertence, surprise, or excusable neglect."
"[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. [Citations.]" (Weitz v. Yankosky (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700].) Hence, "`"[t]he provisions of section 473 of the Code of Civil Procedure are to be liberally construed . . . ." *644 [Citation.]' [Citation.] `. . . [A]ny doubts in applying section 473 must be resolved in favor of the party seeking relief from default.' [Citation.]" (Maynard v. Brandon (2005) 36 Cal.4th 364, 371-372 [30 Cal.Rptr.3d 558, 114 P.3d 795].) "Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations `very slight evidence will be required to justify a court in setting aside the default.' [Citations.]" (Elston v. City of Turlock (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713].)
"A motion seeking such relief lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court's discretion is not unlimited and must be `"exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice."' [Citations.]" (Elston v. City of Turlock, supra, 38 Cal.3d at p. 233.) "[A] trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. [Citations.]" (Id. at pp. 233-234.)
Here, Burns's counsel made two mistakes. First, he failed to file a written stipulation to extend the time for filing a motion for attorney fees by October 15, when the original time expired. Second, he failed to file a motion for attorney fees by October 31, when the extended time expired. It is not seriously disputed that the second mistake was excusable, due to the Southern California wildfires. The trial court, however, found that the first mistake was inexcusable neglect, in light of California Rules of Court, rule 3.1702(c)(2).
(3) "While a mistake in law is a ground for relief under section 473, the `issue of which mistake in law constitutes excusable neglect presents a question of fact. The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law. [Citation.]' [Citation.] `[I]gnorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief. [Citations.]' [Citation.]" (Robbins v. Los Angeles Unified School Dist. (1992) 3 Cal.App.4th 313, 319 [4 Cal.Rptr.2d 649].)
Under controlling case law, however, Burns's counsel was entitled to rely on his adversary's actual and undisputed agreement; such reliance was not inexcusable neglect, even in the face of a rule requiring him to file a written stipulation with the court. Frank E. Beckett Co. v. Bobbitt (1960) 180 Cal.App.2d Supp. 921 [4 Cal.Rptr. 833] is most closely on point. There, the plaintiff's attorney orally granted the defendant's attorney an extension of time to answer the complaint. The defendant's attorney sent a confirming letter. Nevertheless, while the oral extension was still in effect, the plaintiff's *645 attorney obtained a default judgment. (Id. at p. Supp. 923.) The trial court denied the defendant's motion to vacate the default judgment under section 473. (Frank E. Beckett Co., at p. Supp. 924.)
The appellate court held that this was an abuse of discretion. (Frank E. Beckett Co. v. Bobbitt, supra, 180 Cal.App.2d at pp. Supp. 927-928.) It acknowledged that "[s]ection 283, Code of Civil Procedure, provides, that stipulations between attorneys must either (a) be in writing filed with the clerk, or (b) be entered on the minutes of the court. It is commonly known, however, that notwithstanding this section, it is a matter of common practice among attorneys to honor oral stipulations relating to actions pending in our courts. Certainly, it is not the purpose of the section to encourage a disrespect for such oral stipulations. Its underlying purpose is to avoid misunderstandings which may arise where there is a dispute as to the precise meaning of such oral stipulations. [¶] This court . . . is not divested, in a case of the character here involved, of its broad discretionary power to relieve a party from a default which he suffered in reliance on an oral stipulation with his adversary." (Id. at p. Supp. 924.)
The court concluded that the defendant's counsel was justified in relying on the oral agreement: "Having acquiesced in and accepted the oral stipulation, the plaintiff was thereafter bound to honor that stipulation to the fullest degree, and plaintiff's attorney could not, in good conscience . . ., enter judgment by default. His act in so doing constituted a violation of his agreement and furnishes ample grounds for vacating the default judgment entered by him." (Frank E. Beckett Co. v. Bobbitt, supra, 180 Cal.App.2d at p. Supp. 925.)
Similarly, in Johnson v. Sweeney (1892) 95 Cal. 304 [30 P. 540], the plaintiff's attorney orally granted the defendant's attorney an extension of time to file a demurrer. Nevertheless, before the extension expired, the plaintiff's attorney obtained the entry of a default judgment. The trial court denied a motion to set aside the default judgment. (Id. at pp. 305-306.)
(4) The Supreme Court reversed. It explained: "It is a general rule that a stipulation of counsel cannot be enforced unless put in writing, or entered in the minutes of the court; but where an oral agreement for an extension of time to answer or demur is admitted, and has been relied on by the defendant, a judgment by default, taken against him in violation of the terms of the stipulation, will be set aside. If the party against whom a verbal stipulation is invoked denies that such a stipulation was made, the court will not hear the parties for the purpose of settling the dispute; but where the facts relied upon by the moving party are not controverted, there is no reason for the application of the rule, and it is too late to repudiate the stipulation after it *646 has been executed." (Johnson v. Sweeney, supra, 95 Cal. at p. 306; see also Waybright v. Anderson (1927) 200 Cal. 374, 379-380 [253 P. 148] [trial court could find that counsel's reliance on adversary's oral stipulation was excusable neglect].)
(5) Here, Moore's counsel has never denied granting at least two extensions of time. Apparently he did, in one conversation, deny granting the third extension; however, he did not deny it in opposition to the motion under section 473, nor does he deny it in this appeal. He granted these extensions even though the first one had not been timely filed with the court. His client benefited from the extensions, because it gained the opportunity to try to settle Burns's claim for attorney fees. Under these circumstances, he is taking advantage of Burns's counsel's mistake in precisely the manner that is disfavored by law, to say nothing of common decency. The failure of Burns's counsel to file a written stipulation by October 15 is therefore excusable neglect as a matter of law.

B. The Applicability of Section 1008.

The trial court also reasoned, in part, that Burns was trying to use section 473 as an end run around section 1008: "This motion, in effect, is a motion for reconsideration of the motion for attorney fees and costs, and Burns has presented no new or different facts, circumstances or law that could not have been presented at the original hearing that would warrant such reconsideration."
In support of this conclusion, the trial court cited Gilberd v. AC Transit, supra, 32 Cal.App.4th 1494 (First Dist., Div. Two). As we will show, however, Gilberd conflicts with more recent cases, which we find to be better reasoned.
In Gilberd, the lower court granted the plaintiff's petition for relief from the claim-filing requirements of the Government Claims Act. The defendant then filed a motion for reconsideration under section 1008. The motion also sought, in the alternative, relief under section 473, on the ground that the defendant's counsel's failure to request a hearing after the trial court had already issued a tentative ruling in favor of the plaintiff constituted an excusable mistake. The trial court granted reconsideration, denied the plaintiff's petition, and sustained a demurrer to the complaint, without leave to amend. (Gilberd v. AC Transit, supra, 32 Cal.App.4th at p. 1498.)
The appellate court reversed, holding that the defendant had failed to show any "`new or different facts, circumstances, or law,'" as section 1008 would require. (Gilberd v. AC Transit, supra, 32 Cal.App.4th at pp. 1499-1500.) The *647 defendant argued that the trial court had properly granted relief under section 473. (Gilberd, at p. 1501.) The appellate court disagreed: "To hold, under the circumstances presented in this case, that the general relief mechanism provided in section 473 could be used to circumvent the jurisdictional requirements for reconsideration found in section 1008 would undermine the intent of the Legislature as specifically expressed in section 1008, subdivision (e): `No application to reconsider any order . . . may be considered by any judge or court unless made according to this section.' Therefore, we decline to so hold." (Ibid.)
Gilberd, however, must be contrasted with Wozniak v. Lucutz, supra, 102 Cal.App.4th 1031 (Second Dist., Div. Seven). In Wozniak, the jury in a limited civil case returned a verdict in excess of $25,000. The trial judge declared a mistrial and ordered the case reclassified as a general civil case. (Id. at p. 1037.) As a result, it was assigned to a different judge. (Id. at pp. 1037-1038.) The defendant then moved, citing section 473, to vacate the mistrial order and to enter judgment in the amount of $25,000. The second judge granted this motion. (Wozniak, at p. 1038.)
The appellate court affirmed. (Wozniak v. Lucutz, supra, 102 Cal.App.4th at p. 1046.) On appeal, the plaintiff argued that the defendant had failed to show any grounds for reconsideration under section 1008. (Wozniak, at p. 1040.) The appellate court held, however, that the defendant was entitled to relief under section 473 based on surprise. (Wozniak, at pp. 1042-1043.) It added: "If the requirements for relief under section 473 are met, the viability of relief under section 473 cannot be defeated because the requirements for relief under section 1008 may not also have been met. [Citation.]" (Id. at p. 1043.)
Wozniak did not cite or discuss Gilberd. The reasoning in each case is tersehardly more than an ipse dixit. Thus, if these two cases stood alone, it would be difficult to articulate a basis for following one or the other. Fortunately for us, they do not stand alone. While this appeal was pending, the Sixth District decided Standard Microsystems Corp. v. Winbond Electronics Corp. (2009) 179 Cal.App.4th 868 [102 Cal.Rptr.3d 140], which offers a careful and thoughtful approach to any asserted conflict between sections 473 and 1008.
In Standard Microsystems, the defendants' attorney advised them that they did not need to answer the plaintiff's complaint. (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at p. 874.) Accordingly, the plaintiff obtained the entry of the defendants' default. (Id. at p. 876.) The defendants (through the same attorney) then filed motions for relief under section 473, subdivision (b), arguing among other things mistake, surprise, and excusable neglect. (Standard Microsystems Corp., at *648 pp. 877-879.) The trial court denied the motions and entered a default judgment against the defendants. (Id. at pp. 879-880.)
After obtaining new counsel, the defendants filed a second motion under section 473, subdivision (b), this time arguing that they were entitled to relief under the mandatory attorney fault provision. (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at pp. 880-881.) Once again, the trial court denied the motion, ruling that it was "`an improper motion for reconsideration. (Code Civ. Proc., § 1008.)'" (Id. at p. 884.)
The appellate court held that the second motion was not barred by section 1008, for two alternative reasons.
(6) First, the court held that the second motion was not within the scope of section 1008, which applies to twoand only twotypes of motions. Section 1008, subdivision (a) applies to "[a] motion . . . that explicitly directs the court's attention to a previous order and seeks to `modify, amend, or revoke [that] order.'" (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at p. 889.) "Consistent with this understanding, merely asking the court to grant relief that is inconsistent with a prior order . . . is not a `motion for reconsideration.'" (Id. at p. 890.) "Here, to the extent defendants' second motion relied upon the mandatory provisions of section 473(b), it did not ask the court to reconsider its previous order. For all defendants cared, and all this record shows, that order was entirely correct when made; indeed, on the showing then before the court, it is difficult to see how a different order could have been made. The second motion rested on an entirely different legal theory, invoked a different statutory ground, and relied in very substantial part on markedly different facts. It neither asked for, nor sought by sly evasion, a determination contrary to any determination made in the first order. On the contrary, it cited that order as part of the series of events that entitled defendants to relief from the judgment. We therefore decline to view the later motion as one described in, or regulated by, section 1008(a)." (Id. at p. 891.)
In addition, section 1008, subdivision (b) applies to "a second application for `the same order' the court has already declined to make." (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at p. 891.) The court expressed doubt that any two motions "rest[ing] on entirely distinct factual and legal predicates" would ever seek "the same order" within the meaning of section 1008, subdivision (b). (Standard Microsystems Corp., at p. 891; see also id. at pp. 891-892.) However, it then held, more narrowly, that the two motions before it did not seek the same order, because the first motion sought to set aside the defaults, whereas the second motion sought to set aside the default judgment (id. at pp. 892-893): "[A]ssuming the second *649 motion was a renewal of the first motion insofar as it sought relief from the underlying default, it was not barred by that fact, in whole or part, because the relief thus sought was ancillary to, and would be necessary to carry into effect, the order vacating the judgment, which was subject to no such constraint." (Id. at p. 893, italics added.)
(7) Separately and alternatively, the court also held that, to the extent that section 1008 conflicted with the attorney fault provisions of section 473, subdivision (b), "the latter must prevail." (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at p. 873; see also id. at pp. 893-896.) It explained: "As we have already said, section 1008 inflicts a procedural forfeiture, such that uncertainties should be resolved against its application. Section 473(b), in contrast, is a remedial statute, and as such is to be construed liberally, which is to say expansively, to favor its object that cases be adjudicated on the merits rather than determined by default. [Citations.] The same result follows from the familiar principle that in the event of conflict, specific provisions must prevail over more general ones. [Citations.] Section 1008 deals with the general subject of motions to reconsider previous orders and renewals of previous motions. Section 473(b) deals with applications for relief from a default or default judgment entered through the fault of the defendant's attorney. As the latter subject is considerably narrower and more specific than the former, the latter provision will, absent some countervailing consideration, govern in any conflict." (Id. at pp. 894-895.)
Standard Microsystems did not cite either Gilberd or Wozniak. It was critical, however, of other cases that had applied section 1008 more broadly than its literal terms required on the theory that it is "jurisdictional": "Declaring a statute `jurisdictional' with respect to subject X does not alter the definition of X. . . . It is true that statutory terms may sometimes be read more or less `liberally' or `broadly' depending on their effects, but we see no characteristic of section 1008 that requires courts to give it an expansive application. Indeed, it appears to fall squarely within at least one class of statutes that have traditionally been strictly construed, i.e., those statutes effecting a procedural forfeiture. [Citations.]" (Standard Microsystems Corp. v. Winbond Electronics Corp., supra, 179 Cal.App.4th at p. 889.) This criticism applies with equal force to Gilberd, which used such "jurisdictional" reasoning.
Under Standard Microsystems,[3] then, section 1008, subdivision (a) did not apply. Burns's motion for relief under section 473 did not seek to "modify, amend, or revoke" the order denying attorney fees. (§ 1008, subd. (a).) It *650 accepted that the order denying attorney fees was correct when made; it rested on a different legal theory, invoked a different statute, and relied on different and additional facts. Also under Standard Microsystems, section 1008, subdivision (b) did not apply, because the fee motion and the motion for relief under section 473 did not seek "the same order."
Admittedly, the earlier fee motion had incorporated by reference Burns's even earlier ex parte application, which had explicitly sought relief under section 473. Nevertheless, the ex parte application had been denied without prejudice; this could not bar a new motion under section 473. Moreover, the fee motion had incorporated the ex parte application solely for the purpose of explaining why the fee motion was timely; the fee motion itself (unlike the ex parte application) did not so much as mentionmuch less seek relief undersection 473.[4]
Finallyand again under Standard Microsystemsto the extent that section 473 conflicts with section 1008, section 473 must prevail. It is true that Standard Microsystems's holding to this effect was limited to the mandatory attorney fault provisions of section 473, subdivision (b). It reasoned, however, that section 473 is remedial and thus is to be construed liberally, whereas section 1008 inflicts a forfeiture and thus is to be construed narrowly. It further reasoned that section 473 is specific, whereas section 1008 is general. This reasoning also applies to the discretionary provisions of section 473, subdivision (b).
We therefore conclude that the trial court erred by denying Burns's motion for relief from default under section 473.

*651 IV

DISPOSITION
The order appealed from is reversed. Burns is awarded costs and attorney fees on appeal. The trial court is directed to grant Burns's motion for relief from default and to allow Burns to file a new motion for attorney fees in connection with the previous appeal, which Burns may combine with a motion for attorney fees in connection with this appeal. The deadline for filing either motion (or both) will be 40 days after the clerk sends notice of issuance of the remittitur in this appeal.
McKinster, Acting P.J., and Miller, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.
[1] David R. Moore and Gail Le Moore were sued in their capacity as trustees of the Moore Family Trust.
[2] Other named defendants were later dismissed.
[*] See footnote, ante, page 637.
[3] At oral argument, counsel for Moore asserted that a recent case, California Correctional Peace Officers Assn. v. Virga (2010) 181 Cal.App.4th 30 [103 Cal.Rptr.3d 699] (CCPOA), had disagreed with Standard Microsystems. However, CCPOA did not disagree with Standard Microsystems with respect to any issue relevant to this appeal.

CCPOA did not involve any motion under section 473. Rather, the defendants moved for attorney fees under a California statute; when that was denied, they moved for attorney fees under a federal statute. The trial court denied the second motion as an improper motion for reconsideration in violation of section 1008. (CCPOA, supra, 181 Cal.App.4th at pp. 35-36.)
The appellate court upheld this ruling. (CCPOA, supra, 181 Cal.App.4th at pp. 42-48.) It distinguished Standard Microsystems because, in the case before it, the moving parties "sought identical relief in both their first and second motions . . . ." (CCPOA, at p. 45.) It further distinguished Standard Microsystems specifically because the case before it did not involve any other statute, such as section 473. (CCPOA, at p. 48.)
In a footnote, the court also stated: "It has long been the view that a party seeking reconsideration of a prior order based on `new or different facts' must provide a satisfactory explanation for failing to present the evidence sooner. [Citations.] . . . Standard Microsystems criticized the `court-made' diligence requirement embodied in this line of cases, contending that they `attributed to the statute a meaning and effect that cannot be found anywhere in its language.' [Citation.] The court thus declined to follow them. [Citation.] We respectfully disagree with Standard Microsystems's rejection of the diligence requirement." (CCPOA, supra, 181 Cal.App.4th at pp. 46-47, fn. 15.) Needless to say, there is no diligence issue in our case.
[4] Moore concedes that "The [fee] motion's memorandum of points and authorities is silent as to any CCP § 473 argument."